Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| KRUPP & CO., INC.<br><br>Peticionario<br><br>V.<br><br>JOS[É] M. TORAL MUÑOZ, CARMEN SILVIA PEREYÓ Y LA SOCIEDAD CONYUGAL COMPUESTA POR AMBOS<br><br>Recurridos | KLCE202400819 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Caso Núm.: GB2023CV00656<br><br>Sobre: Enriquecimiento Injusto, Daños y Perjuicios |
| --- | --- | --- |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 13 de septiembre de 2024.

El 29 de julio de 2024, compareció ante este Tribunal de Apelaciones, Krupp & Co., Inc. (en adelante, Krupp o la peticionaria), mediante recurso de *Certiorari*. Por medio de este, nos solicita que revisemos la *Minuta* del 24 de junio de 2024, transcrita en la misma fecha y notificada el 28 de junio de 2024. En virtud de esta, el Tribunal de Primera Instancia, Sala Superior de Guaynabo, en corte abierta, declaró No Ha Lugar la solicitud de descalificación presentada por la peticionaria.

Posteriormente, los recurridos instaron una solicitud de desestimación, a la cual se opuso la peticionaria.

Por los fundamentos que expondremos a continuación, se declara No Ha Lugar la solicitud de desestimación y se deniega la expedición del recurso de *Certiorari*.

**I**

Según surge del expediente, Krupp es una corporación creada por el señor Rigoberto Figueroa Figueroa, quien fungía como su

único y principal accionista. El 7 de diciembre de 2019, el señor Figueroa Figueroa falleció, habiendo otorgado testamento, mediante el cual, nombró como albacea al señor Rigoberto Cintrón Perales (en adelante, señor Cintrón Perales). A los fines de cumplir con sus responsabilidades, el señor Cintrón Perales tomó posesión de la oficina de Krupp. Posteriormente, el 20 de enero de 2020, mediante resolución corporativa, este fue nombrado como presidente de la Junta de Directores de Krupp, así como también, principal director ejecutivo de la corporación. Simultáneamente, el señor José Toral Muñoz (en adelante, señor Toral), fue nombrado como tesorero de la Junta de Directores de Krupp, y como principal ejecutivo de inversiones.

Ante este escenario, el 1 de agosto de 2023, Krupp presentó una *Demanda* sobre restitución de pago de lo indebido y daños y perjuicios, contra el señor Toral Muñoz, su esposa, la señora Carmen Silvia Pereyó, y la Sociedad Legal de Gananciales compuesta por ambos (en adelante y en conjunto, los recurridos).[1] En síntesis, la peticionaria alegó que, para finales del mes de enero, o principios del mes de febrero de 2020, el señor Toral Muñoz le informó al señor Cintrón Perales, y a otro de los directores de la Junta de Directores de Krupp que, el señor Figueroa Figueroa no le había pagado unas facturas presentadas por servicios prestados. Alegó que, el señor Toral Muñoz presentó una factura con fecha del 16 de enero de 2014, por la cantidad de $19,466.25.

Sostuvo que, tras examinar la misma, ambos directores procedieron a emitir un cheque a favor del señor Toral Muñoz, desde la cuenta bancaria de Krupp, por la cantidad de veinte mil dólares ($20,000.00). Indicó que, el señor Toral Muñoz endosó el mismo, y lo depositó en su cuenta bancaria.

---

[1] Apéndice 1 del recurso de *Certiorari*, págs. 1-10.

Posteriormente, el 7 de febrero de 2020, el señor Toral Muñoz presentó una segunda factura ante los directores de Krupp, por otros servicios presentados al señor Figueroa Figueroa, por la cantidad de $19,205.00. El señor Toral Muñoz alegó que, la misma tampoco le había sido pagada. Ante ello, la factura le fue pagada en plazos.

Conforme surge de la *Demanda*, varios años después, el 2 de mayo de 2023, el señor Cintrón Perales encontró un expediente en la oficina de Krupp, con el nombre del señor Toral Muñoz. En su interior, el expediente contenía unas facturas firmadas en original por este último. Al examinarlas, el señor Cintrón Perales pudo notar que, las mismas eran similares a las facturas pagadas en el mes de febrero de 2020. Sostuvo que, en esencia, la única distinción entre estas se circunscribía a varias palabras que constaban escritas en las facturas encontradas, a saber, "Paid, Cortesía", y/o "N/C".[2]

El 16 de junio de 2023, Krupp notificó al señor Toral Muñoz el hallazgo de las facturas, y le indicó que debía renunciar inmediatamente, proveyéndole un periodo de cinco (5) días para ello.

El 19 de junio de 2023, el señor Toral Muñoz, a través de su representante legal, respondió a Krupp, indicando que, el señor Figueroa Figueroa le había expresado que le pagaría las facturas más adelante, lo cual no ocurrió. El 22 de junio de 2023, la peticionaria respondió a la comunicación reiterándose en su postura.

Por todo lo anterior, Krupp reclamó, entre otros, la restitución del dinero pagado, más una compensación por los daños y perjuicios y económicos causados.

Tras varios trámites procesales innecesarios pormenorizar, el 26 de febrero de 2024, la licenciada Patricia Rivera MacMurray (en

---

[2] *Íd.*, pág. 5.

adelante, licenciada Rivera MacMurray), presentó una *Moción para Unirse a Representación Legal* de los recurridos, junto al licenciado Carlos Díaz Olivo y la licenciada María Isabel Palos Alvarado.[3] Luego, el 26 de febrero de 2024, notificada al próximo día, el foro de instancia emitió *Orden*, declarando Ha Lugar la referida moción.[4]

Más adelante, el 14 de mayo de 2024, la peticionaria instó un escrito intitulado *Solicitud de Descalificación de Representación Legal*.[5] Mediante esta, en esencia, solicitó la descalificación de la licenciada Rivera MacMurray. Para fundamentar su petitorio, Kropp sostuvo, en primer lugar, que, la licenciada Rivera MacMurray había sido testigo instrumental del testamento otorgado por el señor Figueroa Figueroa. En segundo lugar, indicó que, a través del referido testamento, el señor Figueroa Figueroa había designado como única y universal heredera a la Fundación Rigoberto Figueroa Figueroa (en adelante, la Fundación). Precisó que, la licenciada Rivera MacMurray era la esposa y socia del licenciado José A. Hernández Mayoral (en adelante, licenciado Hernández Mayoral), en el bufete legal HM&RMAC, LLC, quien representaba a la referida Fundación en varios pleitos legales. Añadió que, anteriormente, el licenciado Hernández Mayoral también había prestado sus servicios al señor Cintrón Perales, en su carácter de albacea, para atender asuntos de la sucesión.

A tenor, la peticionaria arguyó que, permitir la representación de la licenciada Rivera MacMurray implicaría el permitir acceso al licenciado Hernández Mayoral a toda la prueba que se presentara en el caso, lo cual resultaría en un grave conflicto de interés por parte de ambos, a tenor con lo establecido en los cánones 21 y 38 de Ética Profesional.

---

[3] Apéndice 7 del recurso de *Certiorari*, pág. 26.
[4] Apéndice 8 del recurso de *Certiorari*, pág. 27.
[5] Apéndice 12 del recurso de *Certiorari*, págs. 31-78.

El 14 de mayo de 2024, el tribunal primario emitió *Orden*, concediendo a la licenciada Rivera MacMurray un término de veinte (20) días para fijar su posición.[6] Asimismo, el foro *a quo* le concedió un plazo de veinte (20) a la peticionaria, para que clarificase "el motivo por el cual aguardó dos meses y medio para solicitar este remedio, habida cuenta de que la licenciada asumió representación legal el 26 de enero de 2024, con participación durante la vista celebrada el 27 de febrero de 2024".[7]

El 29 de mayo de 2024, Krupp presentó *Moción en Cumplimiento de Orden*, esgrimiendo, en síntesis, que, no fue hasta el 1 de mayo de 2024 que el señor Cintrón Perales se percató de que, la licenciada que había asumido la representación legal del señor Toral Muñoz lo era la licenciada Rivera MacMurray.[8]

Posteriormente, el 3 de junio de 2024, los recurridos instaron *Oposición a Moción de Descalificación*.[9] En primer lugar, alegaron que, la peticionaria carecía de legitimación activa para instar la solicitud de descalificación. Detallaron que, Krupp no había demostrado que la representación de la licenciada Rivera MacMurray le causara un perjuicio o una desventaja indebida en el caso, según lo exige el ordenamiento jurídico. Esbozaron, además, que, según resuelto por el Tribunal Supremo de Puerto Rico, Krupp venía obligada a demostrar, entre otros, que, entre esta y el abogado que ahora representaba a la parte contraria –entiéndase, la licenciada Rivera MacMurray–, había existido una relación previa de abogado-cliente, lo cual no había ocurrido.

En segundo lugar, los recurridos alegaron que, el que la licenciada Rivera MacMurray hubiese actuado como testigo instrumental en el testamento del señor Figueroa Figueroa no

---

[6] Apéndice 13 del recurso de *Certiorari*, pág. 79.
[7] *Íd.*
[8] Apéndice 14 del recurso de *Certiorari*, págs. 80-82.
[9] Apéndice 15 del recurso de *Certiorari*, págs. 83-97.

generaba un conflicto de interés. Manifestaron que, ello no generó una relación abogado cliente ni con el señor Figueroa Figueroa ni con Krupp.

En tercer lugar, los recurridos sostuvieron que, la condición de matrimonio de la licenciada Rivera MacMurray con el licenciado Hernández Mayoral tampoco generaba un conflicto de interés. Precisaron que, para que el mismo existiera, el licenciado Hernández Mayoral tendría que haber representado a la peticionaria en un asunto relacionado, en el que hubiese obtenido información que ahora pudiese utilizar la licenciada Rivera MacMurray.

Por último, la parte recurrida manifestó que, la solicitud de descalificación pretendía beneficiar al señor Cintrón Perales, y no proteger a Krupp.

Así las cosas, el 24 de junio de 2024, el foro de instancia celebró una vista sobre el estado de los procedimientos.[10] Conforme surge de la *Minuta* recurrida, el tribunal primario atendió los escritos reseñados en los párrafos que anteceden, escuchó los argumentos de las partes, y resolvió lo siguiente:

> Examinada la solicitud de descalificación promovida por la parte demandante y la oposición, con el beneficio de la argumentación de las partes, el Tribunal entiende que no se ha acreditado la evidencia para descalificar a la licenciada Rivera MacMurray. Así las cosas, [se] declara no ha lugar la solicitud de descalificación.[11]

Inconforme con la determinación del foro primario, el 29 de julio de 2024, la peticionaria acudió ante nos mediante el recurso que nos ocupa, y realizó los siguientes señalamientos de error:

**PRIMER ERROR**:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE GUAYNABO AL DECLARAR NO HA LUGAR A LA SOLICITUD DE DESCALIFICACIÓN PRESENTADA POR LA PARTE DEMANDANTE, INCURRIENDO EN CRASO ABUSO DE DISCRECIÓN, ACTUANDO DE ESE MODO CON PASIÓN, PREJUICIO, PARCIALIDAD Y ERROR

---

[10] Apéndice 17 de recurso de *Certiorari*, pág. 99-100.
[11] *Íd*, pág. 99.

MANIFIESTO EN CONTRAVENCIÓN AL DERECHO CONSTITUCIONAL A UN DEBIDO PROCEDIMIENTO DE LEY.

**SEGUNDO ERROR**:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE GUAYNABO AL DECLARAR NO HA LUGAR A LA SOLICITUD DE DESCALIFICACIÓN PRESENTADA POR LA PARTE DEMANDANTE Y DENEGAR LA SOLICITUD DE UNA VISTA EVIDENCIARIA, NEG[Á]NDOLE SU DERECHO A UNA ADECUADA REPRESENTACIÓN LEGAL, A SER O[Í]DO Y PRESENTAR PRUEBA ANTES DEL TRIBUNAL RESOLVER LA SOLICITUD; Y CUYA DETERMINACIÓN NO FUE FUNDAMENTADA POR EL TRIBUNAL, LO QUE RESULTA CONTRADICTORIO A LAS EXPRESIONES DEL TPI EXPRESANDO SIMPLEMENTE ...“EL TRIBUNAL ENTIENDE QUE NO SE HA ACREDITADO LA EVIDENCIA”, EN UN CLARO ABUSO DE DISCRECIÓN, ACTUANDO DE ESE MODO CON PASIÓN, PREJUICIO, PARCIALIDAD Y ERROR MANIFIESTO EN CONTRAVENCIÓN AL DERECHO CONSTITUCIONAL A UN DEBIDO PROCEDIMIENTO DE LEY.

**TERCER ERROR**:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE GUAYNABO AL DECLARAR NO HA LUGAR A LA SOLICITUD DE DESCALIFICACIÓN PRESENTADA POR LA PARTE DEMANDANTE, AL NO CONSIDERAR NI DARLE NINGÚN VALOR PROBATORIO A LAS PROPIAS ADMISIONES EN EL ESCRITO EN OPOSICIÓN A MOCIÓN DE DESCALIFICACIÓN, NI RESOLVER EL ASUNTO SOBRE EL CLARO CONFLICTO DE INTER[É]S EN LA RELACIÓN PREVIA DE ABOGADO CLIENTE LO QUE RESULTA ADVERSA ESTANDO ESTA SUSTANCIALMENTE RELACIONADA, A PESAR DE QUE LA LIC. RIVERA MACMURRAY EN SU MOCIÓN EN OPOSICI[Ó]N A MOCIÓN DE DESCALIFICACIÓN NO NEGÓ EN NINGÚN MOMENTO QUE ELLA Y SU ESPOSO Y SOCIO, EL LIC. JOSÉ A HERNÁNDEZ MAYORAL Y SU BUFETE HM&RMAC, LLC, HAYAN REPRESENTADO A LA FUNDACIÓN RIGOBERTO FIEGUEROA FIGUEROA, NI QUE ÉSTA SEA LA ÚNICA Y UNIVERSAL HEREDERA DEL SR. RIGOBERTO FIEGUEROA FIGUEROA, QUE KRUPP & CO., INC. ES UN ACTIVO DE LA SUCESIÓN Y FUNDACIÓN DE DON RIGOBERTO FIEGUEROA FIGUEROA; ASÍ COMO TAMPOCO QUE SU REPRESENTADO, SR. TORAL MU[Ñ]OZ, COETÁNEAMENTE OSTENTA EL CARGO DE TESORERO Y PRESIDENTE DE LA JUNTA DE DIRECTORES DE DICHA FUNDACIÓN, Y EL CARGO DE TESORERO EN KRUPP & CO., INC., Y A SU VEZ EST[Á] DEMANDADO POR KRUPP, POR LO QUE SUS DETERMINACIONES ESTÁN EN CONFLICTO CON EL BALANCE MÁS RACIONAL, JUSTICIERO Y JURÍDICO DE LA CONTROVERSIA, INCURRIENDO EN CRASO ABUSO DE DISCRECIÓN, ACTUANDO DE ESE MODO

CON PASIÓN, PREJUICIO, PARCIALIDAD Y ERROR MANIFIESTO.

**CUARTO ERROR**:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE GUAYNABO AL DECLARAR NO HA LUGAR A LA SOLICITUD DE DESCALIFICACIÓN PRESENTADA POR LA PARTE DEMANDANTE, AL PERMITIR QUE LA LIC. RIVERA MACMURRAY CONTIN[Ú]E SIENDO LA REPRESENTACIÓN DE UN DEMANDADO CUYA CONTROVERSIA REQUIERE DEFINIR QUÉ POSICIÓN OCUPAN EN ESTOS HECHOS LA REPRESENTACIÓN LEGAL SUCESIVA QUE POR ESTAR SUSTANCIALMENTE RELACIONADA IMPIDE QUE UN ABOGADO QUE HA PRESTADO SERVICIOS A BENEFICIO DE KRUPP & CO., INC., REPRESENTE SIMULTÁNEAMENTE A UN DEMANDADO POR KRUPP & CO., INC., EN UN CLARO ABUSO DE DISCRECIÓN, ACTUANDO DE ESE MODO CON PASIÓN, PREJUICIO, PARCIALIDAD Y ERROR MANIFIESTO EN CONTRAVENCIÓN AL DERECHO CONSTITUCIONAL A UN DEBIDO PROCEDIMIENTO DE LEY.

Posteriormente, el 6 de agosto de 2024, Krupp instó ante esta Curia *Moción Urgente en Auxilio de Jurisdicción*. Mediante *Resolución* emitida el 6 de agosto de 2024, un Panel Especial declaró No Ha Lugar la misma, y concedió a los recurridos un plazo de diez (10) días para presentar su posición en torno al recurso de *Certiorari*.

Tras varios trámites procesales, el 9 de agosto de 2024, los recurridos instaron *Solicitud de Desestimación*. Luego, el 16 de agosto de 2024, presentaron *Oposición a Petición de Certiorari*.

Finalmente, el 22 de agosto de 2024, la peticionaria instó *Oposición a Solicitud de Desestimación*.

Contando con el beneficio de la comparecencia de ambas partes, estamos en posición de disponer del recurso ante nuestra consideración.

**II**

**A. *Certiorari***

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Caribbean Orthopedics v. Medshape*

*et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[12]

---

[12] 4 LPRA Ap. XXII-B, R. 40.

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tal fin, la Regla 52.1 de Procedimiento Civil, *supra*, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una **resolución** u **orden** bajo las **Reglas 56 y 57** o de la **denegatoria de una moción de carácter dispositivo**. No obstante, y por **excepción** a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar **órdenes** o **resoluciones interlocutorias** dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la **admisibilidad de testigos de hechos o peritos esenciales**, asuntos relativos a **privilegios evidenciaros**, **anotaciones de rebeldía**, en casos de **relaciones de familia**, en casos que revistan **interés público** o en cualquier otra situación en la cual esperar a la apelación constituiría un **fracaso irremediable de la justicia**. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis nuestro). Regla 52.1 de Procedimiento Civil, *supra.*

Según se desprende de la precitada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios

evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. *Descalificación de abogado*

La Regla 9.3 de Procedimiento Civil, 32 LPRA Ap. V, dispone lo siguiente respecto al poder de los tribunales para supervisar la conducta de los abogados:

> El Tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los abogados y abogadas que postulan ante sí, podrá, a iniciativa propia o a solicitud de parte, imponer sanciones económicas o de otra naturaleza o descalificar a un abogado o abogada que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el Tribunal, sus representados(as) o sus compañeros(as) abogados(as).

Según dispuesto por nuestro ordenamiento jurídico, los procedimientos de descalificación de abogados no constituyen acciones disciplinarias de por sí. *ORIL v. El Farmer Inc.*, 204 DPR

229, 241 (2020); *Job Connection Center v. Sups. Econo*, 185 DPR 585, 596 (2012); *Meléndez v. Caribbean Int'l News*, 151 DPR 649, 660 (2000). Puesto que, la descalificación es una medida preventiva que tiene como fin (1) evitar posibles infracciones a los cánones del Código de Ética Profesional o (2) evitar actos disruptivos de los abogados durante el trámite de un pleito. *ORIL v. El Farmer Inc.*, supra, pág. 241; *Job Connection Center v. Sups. Econo*, supra, pág. 596. Es por lo que, los foros de instancia están facultados para evaluar y resolver las mociones de descalificación cuando estas sean presentadas en los casos que se ventilan ante sí. *Liquilux Gas Corp. v. Berríos Zaragoza*, 138 DPR 850, 864 (1995). Los jueces podrán descalificar a los abogados si ello resulta necesario para lograr la solución justa, rápida y económica de los pleitos. *ORIL v. El Farmer Inc.*, supra, pág. 241. Nuestro más Alto Foro ha dispuesto que "[a]l evaluar lo sustantivo en la procedencia de una descalificación, los tribuales deben hacer un análisis de la totalidad de las circunstancias para valorar si la actuación el abogado constituye un acto disruptivo o si tiene el potencial de desembocar en una violación de los Cánones del Código de Ética Profesional". *Íd*. pág. 242; *Meléndez v. Caribbean Int'l News*, supra, pág. 662.

La descalificación puede darse en dos instancias, ya sea (1) por orden del tribunal *motu proprio*, o (2) cuando el Tribunal accede a solicitud de una parte. En lo pertinente, cuando la parte adversa solicita la descalificación, el Tribunal Supremo ha expresado que, la mera presentación de la moción de descalificación no conlleva automáticamente la concesión de tal petición. *ORIL v. El Farmer Inc.*, supra, pág. 242; *Liquilux Gas Corp. v. Berríos Zaragoza*, supra, pág. 864. Cuando el tribunal evalúe una moción de descalificación, deberá además evaluar la totalidad de las circunstancias de acuerdo con los siguientes factores: (1) si el solicitante de la descalificación tiene legitimación activa para invocarla; (2) la gravedad de la posible

violación ética involucrada; (3) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (4) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (5) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos. *Íd.* págs. 242-243; *Liquilux Gas Corp. v. Berríos Zaragoza*, supra, págs. 864-865; *Otano v. Vélez*, 141 DPR 820, 828 (1996); *Job Connection Center v. Sups. Econo*, supra, págs. 597-598.

El juzgador de hechos podrá denegar una solicitud de descalificación presentada por una parte adversa si entiende que esta ha sido interpuesta como una táctica dilatoria del procedimiento. *Íd. Otano v. Vélez*, supra, pág. 828. También podrá ser denegada en instancias donde la solicitud sea considerada frívola o cuando se presenta con el propósito de intimidar a la parte adversa. *Job Connection Center v. Sups. Econo*, supra, pág. 598. Cuando el tribunal atiende una moción de descalificación deberá analizar si la continuación de la representación legal podría causarle perjuicio o una desventaja indebida en el caso a su solicitante. *Íd.*; *ORIL v. El Farmer Inc.*, supra, pág. 243. Asimismo, deberá sopesar el derecho que le asiste a toda persona de escoger con libertad su representación legal. *Íd.* Finalmente, el abogado contra quien se interponga la moción de descalificación tiene derecho a ser oído y a presentar prueba a su favor. *Íd.*; *Job Connection Center v. Sups. Econo*, supra, pág. 598.

En el contexto de la Regla 52.1 de Procedimiento Civil, *supra*, el Tribunal Supremo resolvió que, la descalificación de un abogado tiene repercusiones que afectan potencialmente los derechos de las partes, el trámite de los procedimientos, el derecho de la libre selección de representación legal y los derechos del representante

legal a ser descalificado, es por lo que, es procedente la revisión interlocutoria. *ORIL v. El Farmer Inc.*, supra, pág. 244; *Job Connection Center v. Sups. Econo*, supra, pág. 601. En estos casos, el más Alto Foro ha sido enfático en que "esperar a una apelación constituiría un fracaso irremediable de la justicia". *Íd.*; *ORIL v. El Farmer Inc.*, supra, pág. 244. En *Job Connection Center v. Sups. Econo*, supra, el Tribunal Supremo expresó que los tribunales apelativos estamos llamados a revisar la decisión sobre la descalificación, siempre y cuando se demuestre que el foro de instancia abusó crasamente de su discreción, actuó con prejuicio o parcialidad, se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esta etapa evitaría un perjuicio sustancial. *ORIL v. El Farmer Inc.*, supra, pág. 244. Además, la descalificación de un abogado no deberá imponerse ligeramente, puesto que, esta afecta aspectos tales como los derechos de las partes y el trámite de los procedimientos. *Íd.* El Tribunal Supremo ha destacado que la descalificación únicamente procederá cuando sea estrictamente necesario, pues se considera un remedio drástico que debe ser evitado si existen medidas menos onerosas que puedan asegurar la integridad del proceso judicial y el trato justo de las partes. *Job Connection Center v. Sups. Econo*, supra, pág. 597; *ORIL v. El Farmer Inc.*, supra, pág. 244.

**III**

En esencia, la peticionaria sostiene que, el foro de instancia incidió al declarar sin lugar la solicitud de descalificación instada.

Tras evaluar detenidamente el recurso presentado, colegimos que no procede la expedición del auto solicitado. Los señalamientos de error planteados por Krupp, por los fundamentos aducidos en la petición, no pueden activar nuestra jurisdicción discrecional en el caso de autos. La decisión recurrida no es manifiestamente errónea

y encuentra cómodo asilo en la sana discreción del Tribunal de Primera Instancia.

Por otro lado, la peticionaria tampoco ha logrado persuadirnos de que nuestra abstención apelativa en este momento y sobre el asunto planteado constituiría un rotundo fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

**IV**

Por los fundamentos que anteceden, se declara No Ha Lugar la solicitud de desestimación y se deniega la expedición del recurso de *Certiorari*.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones